# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JONATHAN CRUZ-DROZ,
    Plaintiff,

v.

LIEUTENANT MARQUIS, et al.,
    Defendants.

CASE NO. 3:17-cv-1291 (MPS)

DECEMBER 27, 2017

## INITIAL REVIEW ORDER RE AMENDED COMPLAINT

Plaintiff Jonathan Cruz-Droz, currently incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 asserting claims for violation of his Eighth Amendment rights. On September 11, 2017, the Court filed an Initial Review Order directing the plaintiff to file an amended complaint. The Court explained that the original complaint did not contain a short and plain statement of the plaintiff's claim as required by Federal Rule of Civil Procedure 8(a)(2) and did not appear to comply with Federal Rule of Civil Procedure 20's requirements concerning party joinder. The Court directed the plaintiff to file an amended complaint that identified the distinct claims he was pursuing against each defendant and set forth the facts supporting each claim.

The plaintiff filed his amended complaint on September 25, 2017. He has chosen not to use the amended complaint form provided to him to clearly set forth his claims. The plaintiff lists a few defendants in the caption on the form and a few others in the body of the form. He includes within the pages appended to the amended complaint form a list entitled "Defendant Im

Suing and Adding to list." ECF No. 10 at 11. The list contains forty names. The Court assumes that these are the defendants he seeks to include in this case. From Cheshire Correctional Institution, the plaintiff names Lieutenant Marquis, C/O Kuningham, Lieutenant Rule, Lieutenant Vazquez, Lieutenant Castro, Lieutenant Rosado, C/O Williams, C/O Abromonte, Captain Watson, C/O Nogunra, Investigator Boyed, A.R.C. Rious, Investigator Kelly, F.O.I. McMahonan, Doe 1, Doe 2, and Psychiatrist Doe 13. From Corrigan Correctional Center, the plaintiff lists F.O.I. Ilvento, C. Ward, and Nurse Doe 11. From MacDougall Correctional Institution, the plaintiff lists Lieutenant Davis, Lieutenant Calderon, C/O Burgos, Deputy Warden Doe 5, Counselor Doe 4, C.O Cheany, C/O Facey, C/O Skully, Lieutenant Harris, Counselor Stanley, F.O.I. Liaison, A.R.C. Bennett, Psychiatrist Doe 9, Psychologist Doe 10, Medical Staff Doe 8, Mental Health Rosado, Captain Doe 7, C/O Doe 3, C/O Doe 6, and Nurse Doe 12.

Rather than setting forth a clear statement of his claim, the plaintiff has appended to his amended complaint fifteen pages on which he lists a few defendants at the top of the page and then describes events occurring on various dates that relate to those persons. ECF No.10 at 12-26. The contents of the pages are summarized below.

The plaintiff identifies defendants Williams, Marquis, Rule, Doe 1, Kuningham, and Vazquez on pages 12 and 13. He states that he is asserting claims of excessive force, harassment and fabrication against them. He alleges that, on July 1, 2017, he was released from restrictive housing. Defendants Williams and Doe 1 assigned him a cell with an inmate who immediately began threatening him. The plaintiff informed defendants Doe 1 and Williams about the threats. Defendant Marquis was called to the cell to deal with the cellmate. Instead, defendant Marquis

forcefully pinned the plaintiff against the bubble and handcuffed him. The plaintiff was compliant at all times. Even though defendants Williams and Doe 1 tried to explain that the plaintiff was not the reason defendant Marquis had been summoned, the plaintiff was taken to restrictive housing. En route defendant Kuningham twisted his arm. When the plaintiff complained, defendant Marquis sprayed him with a chemical agent. The plaintiff was placed on in-cell restraints and issued a false disciplinary report for refusing housing.

The plaintiff also alleges that, on March 21, 2017, defendant Rule approached the plaintiff's cell door and asked him to sign a disciplinary report. The plaintiff explained to defendant Rule that he was being harassed by staff and described the procedures he had taken to address the issue. Defendant Rule was not interested and threatened the plaintiff if he did not sign the disciplinary report. Defendant Rule again threatened the plaintiff if he refused to sign an allegedly false disciplinary report on May 30, 2017. On July 19, 2017, defendant Vazquez issued the plaintiff a false disciplinary report for making vulgar comments. The charge was dismissed.

The plaintiff lists defendants Rosado, Abromonte, Castro, Nogunra, Watson, Doe 2, and Psychiatrist Doe 13 on pages 14 and 15. He alleges that, on May 29, 2017, he spoke to defendant Castro about someone pouring liquid detergent on his television and electronic items. Defendant Castro did not prepare an incident report. The plaintiff also complained to defendants Rosado, Watson and McMahonan but nothing was done. On May 30, 2017, as he was walking to the dining hall, defendant Abromonte began harassing and laughing at the plaintiff. He then searched the plaintiff, took his identification, and fabricated a disciplinary charge which was later dismissed. Defendant Rule also harassed the plaintiff. When the plaintiff spoke to

3

defendant Rosado about defendant Abromonte's actions, defendant Rosado failed to address or report them. On July 2, 2017, when the plaintiff was on in-cell restraints, defendant Rosado entered the cell, mocked the plaintiff, and refused the plaintiff's request to have the restraints removed.

The plaintiff also alleges that defendant Nogunra came to his cell door and stated that he heard that excessive force and a chemical agent had been used against the plaintiff. On June 1, 2017, the plaintiff wrote to defendant Psychiatrist Doe 13 seeking mental health treatment. He alleges that she only understood his need for mental health treatment after staff used excessive force against him.

On pages 16 and 17, the plaintiff lists defendants McMahonan, Boyed, Rious, Ilvento, and Kelly. He lists June 1, 2017, June 3, 2017, July 1, 2017, July 3, 2017, July 7, 2017, and July 21, 2017, as relevant dates. The plaintiff alleges that he submitted a request for camera preservation to defendant McMahonan. She held the request for a time and responded that the request was forwarded to defendant Boyed who then responded that the request was untimely.

On July 3, 2017, the plaintiff was explaining to defendant Kelly that he had not refused housing and complained about the use of excessive force by defendants Marquis and Kuningham. Defendant Kelly refused to listen to all of the plaintiff's complaints and did not investigate the incident properly. Defendant Kelly told the plaintiff that he would be found guilty of the charge and recommended that he sign the disciplinary report. The plaintiff alleges that he submitted grievances about harassment, discrimination, fabrication, excessive force, and defamation. Someone responded that the grievance was not properly submitted because the plaintiff did not attach the inmate request. The plaintiff does not mention any defendant in

4

connection with these allegations.

The plaintiff identifies defendants Davis, Calderon, Burgos, Deputy Warden Doe 5, Doe 4, and Doe 3 in connection with the claims on pages 18 and 19. The plaintiff alleges that, on February 29, 2017, he wrote to defendant Davis complaining about harassment by defendants Facey and Scully and threats from his cellmate. Defendant Davis witnessed the cellmate's hostility toward the plaintiff. On March 12, 2017, the plaintiff informed defendant Calderon about harassment and threats by his cellmate and other inmates. On March 20, 2017, the plaintiff was awakened by his cellmate screaming threats against him. Defendant Doe 3 did not tour the unit as he should have during the hour that the plaintiff's cellmate was threatening him. When the plaintiff tried to speak with defendant Doe 4 about the incident, she said not then but told him to come to her office after lunch. When the plaintiff went to defendant Doe 4's office, she denied asking him to come. The plaintiff asked to speak with defendant Calderon because he had submitted requests to defendant Burgos. Defendant Doe 4 told the plaintiff to pack his property to move to a different cell. While he was doing so, other inmates called the plaintiff names and threatened him. Defendant Burgos did nothing.

The plaintiff states that, while he was in restrictive housing on March 28, 2017, he spoke to defendant Deputy Warden Doe 5 about the constant harassment, fabrication, discrimination and defamation. Deputy Warden Doe 5 merely asked the plaintiff if he wanted to return to O-pod and walked away. On March 15, 2017, the plaintiff asked for a copy of a grievance he was submitting against defendant Davis and signed a receipt to have his inmate account charged for the copy. An unidentified person returned the request form to the plaintiff stating it was complete without copies or postage. Defendant Doe 4 informed defendant Davis that the

5

plaintiff was submitting a grievance against her.

Pages 20 and 21 concerns defendants Cheany, Facey, Skully, Harris, Stanley, and Doe 6. On February 17, 2017, defendant Facey locked the cell door in his face when he was about to leave the cell to attend recreation. She refused to permit the plaintiff to leave his cell to shower. When defendant Skully walked by, the plaintiff asked to be let out, but defendant Skully said that defendant Facey said no. Defendant Doe 6 also refused to release the plaintiff. After fifty minutes of the one hour recreation period had passed, the plaintiff's cell door was opened. The plaintiff challenged defendant Facey's ability to prevent him from attending recreation. Defendant Skully said that she could do so.

On April 6, 2017, defendant Cheany permitted another inmate to enter the plaintiff's cell and extort him. When the plaintiff complained, defendant Cheany did nothing, so the plaintiff reported the conduct. On April 20, 2017, defendant Cheany said something to another inmate while the plaintiff was showering. The inmate mocked and laughed at the plaintiff. The plaintiff confronted defendant Cheany who invited the plaintiff to fight out of view of the camera. The plaintiff refused.

On April 20, 2017, while the plaintiff was complaining to defendants Harris and Rivera about the harassment, defendant Harris issued the plaintiff a disciplinary report for saying something the plaintiff did not say. The charge was dismissed at the disciplinary hearing.

Defendant Stanley was told that someone ran into the plaintiff's cell but he did not follow protocol. On April 9, 2017, when the plaintiff was in restrictive housing, defendant Stanley told the plaintiff that he was going to be returned to Q-pod where the inmate who had threatened the plaintiff and entered his cell was housed.

The allegations on page 22 concern defendants F.O.I. Liaison and A.R.C. Bennett. The plaintiff alleges that, on February 1, 2017, March 1, 2017, and March 8, 2017, he submitted requests for camera preservation. Although the request clearly identified the incident relating to the request, the plaintiff received a response asking for information about the incident. The request was denied as untimely. On February 17, 2017, and March 3, 2017, defendant Bennett received grievances without an inmate request attached. The plaintiff did not attach the inmate requests because they were not returned to him. The grievances were rejected because the requests were not attached.

On pages 23 through 25, the plaintiff references defendants Psychiatrist Doe 9, Psychologist Doe 10, Nurse Doe 11, Nurse Doe 12, Medical staff Doe 8, Mental Health Rosada, and Captain Doe 7. He alleges that the medical staff did not provide him any medical attention following an incident while sharing a cell with inmate Ayala in restrictive housing on April 24, 2017. Inmate Ayala began arguing with the captain. He then covered the cell window and put a mattress against the door. Defendant Doe 7 would not let the plaintiff leave the cell. The cell extraction team arrived but were unable to talk inmate Ayala into leaving the cell. Although the plaintiff stated that he was compliant the captain would not let him leave the cell. The team deployed a chemical agent into the cell. Once he was out of the cell, the plaintiff was not given any medical treatment until he was transferred to another correctional facility about four hours later.

The plaintiff submitted many requests for mental health treatment between February 17, 2017, and March 14, 2017. Staff tampered with the paperwork to conceal the number of requests. On April 7, 2017, Psychologist Doe 10 saw, but did not treat, the plaintiff. The visit

7

was to review a grievance regarding denial of medical attention. At one point, the plaintiff was told that he was on the waiting list to see Psychiatrist Doe 9. When he threatened legal action, Psychiatrist Doe 9 saw the plaintiff and gave him medication. Psychologist Doe 9 was present during the incident with inmate Ayala but did treat the plaintiff. Defendant Rosado told the plaintiff that he needed to see Psychiatrist Doe 9 for treatment of his anxiety. When the plaintiff saw defendant Rosado after he was returned to Q-pod, she altered the dates she saw the plaintiff in the medical records. The plaintiff also alleges that Medical Staff Doe 8 failed to treat his eczema.

Page 26 concerns claims against defendants Ilvento, McMahonan, and Ward. On August 18, 2017, defendant Ilvento delivered two request forms that the plaintiff has submitted to defendant McMahonan. The plaintiff signed the form defendant Ilvento gave him. When the plaintiff requested a copy of what he had signed, he saw that the document was a withdrawal of a lawsuit the plaintiff had filed against defendant McMahonan. The plaintiff requested camera preservation and grieved the issue.

On August 3, 2017, while the plaintiff was attending Tier II programming, defendant Ward put her hands on the plaintiff multiple times. This conduct continued during the sessions in August 2017.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In the September 11, 2017 order, the Court informed the plaintiff that Federal Rule of Civil Procedure 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: first, the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Court explained that, "[w]hat will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.,* 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). As the Second Circuit has observed in the

Rule 13 context,[1] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The Court noted that it appeared unlikely that all of the plaintiff's claims were related. A review of the fifteen pages describing various incidents supports this determination. The plaintiff's claims for denial of medical treatment for eczema, denial of mental health treatment, inappropriate touching during programming, use of excessive force, denial of recreation on one day, harassment at Cheshire Correctional Institution, harassment at Corrigan Correctional Center, and harassment at MacDougall Correctional Institution are all unrelated. Most of these claims involve separate defendants and the claims occurred at three different correctional facilities. Thus, the amended complaint does not comply with Rule 20. To permit the case to proceed on the amended complaint would enable the plaintiff to circumvent the requirements of the Prison Litigation Reform Act.[2]

---

[1] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma,* 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

[2] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner's complaints pursuant to 28 U.S.C. § 1915A. As two commentators have noted:

> In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

The Court will afford the plaintiff one last opportunity to file an amended complaint that complies with Rules 8 and 20, but it will also direct the Clerk to appoint counsel to assist him for the limited purpose of drafting the complaint, as explained further below. The second amended complaint should include only one distinct claim and shall list only the defendants involved in that claim in the case caption.

The plaintiff filed his amended complaint on September 25, 2017. Beginning on October 2, 2017, he filed a long series of additional documents in which he appears to identify additional defendants and claims that he seeks to pursue in this case. ECF No. 11-26. For example, the document filed on October 2, 2017, lists Lieutenants Potts and Gillet, Deputy Warden Barone, Correctional Officers Augman, Skelton, Savoei, Commissary Magnozina, Jones, Wagzlar, Douesis, and Doe 3, and describes events occurring after August 25, 2017. In the document filed on October 4, 2017, the plaintiff does not list any defendants at the top of the page. Instead he refers to various named and unnamed officers and describes events occurring from 2014 to the present. The document filed on October 10, 2017, consists of 201 pages of handwritten allegations interspersed with copies of documents and medical records. The handwritten pages contain many deletions. The document filed on October 11, 2017, begins with a request for preservation of surveillance footage and allegations of harassment but includes many medical records. The document filed on October 16, 2017, references medical personnel, but does not indicate how any medical staff member violated the plaintiff's rights. In addition to these five

---

John Boston & Daniel E. Manville, Prisoners' Self-Help Litigation Manual 348 (4th ed. 2010) (collecting cases). Indeed, if the Court reviewed the plaintiff's complaint striking redundant or immaterial allegations, as opposed to dismissing the complaint in its entirety, the plaintiff would circumvent the PLRA's "three strikes" rule and filing fee requirements.

documents, the plaintiff has filed documents, which are similar statements of various incidents. Many of these documents reference persons not included in the forty defendants identified in the amended complaint.

The plaintiff cannot amend his complaint by submitting these documents. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). In addition, the plaintiff can amend his complaint only once as of right. To amend further he must seek permission from the Court. *See* Fed. R. Civ. P. 15(a). As the plaintiff did not obtain leave of court before filing these documents, the Court will not consider any allegations contained in them. These documents (ECF No. 11-26) are ordered stricken from the record.

III.    Conclusion

The Court enters the following order:

The amended complaint (ECF No. 10) is dismissed without prejudice. The Court hereby appoints counsel from the pro bono panel (either the Volunteer Panel or the Appointment Panel) for the limited purpose of assisting the plaintiff to draft a complaint that satisfies Rules 8 and 20 in this matter as further explained in the Court's two Initial Review Orders. The new complaint shall be filed within 60 days of counsel's appointment. Once the complaint has been drafted and filed, counsel's representation of the plaintiff shall cease, counsel shall have no further obligation to the plaintiff in his matter (except those obligations that a lawyer has to any former client), and his or her appearance shall be considered withdrawn, unless appointed counsel files a motion, within 14 days of filing the complaint, to continue the appointment for the remainder of the case. The plaintiff is hereby notified that until further order of this Court, he shall make no further filings in this matter except through appointed counsel, who, the Court expects, will be in touch

with him soon after the appointment is made. Finally, should appointed counsel find, after meeting with the plaintiff and making a good-faith attempt to assist the plaintiff in drafting the complaint, that he or she is unable to carry out the task designated by this order consistent with his or her professional obligations or that he or she has irreconcilable differences with the plaintiff, then he or she shall file a statement to that effect and his or her appearance will then be considered withdrawn and he or she shall have no further obligation to the plaintiff.

**SO ORDERED** this 27th day of December 2017 at Hartford, Connecticut.

/s/
Michael P. Shea, U.S.D.J.
United States District Judge